# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MELVIN MARIN,<br>Box 1042<br>Eau Claire, WI 54702 | Case Number |
| Plaintiff, | COMPLAINT<br>FOR<br>VIOLATIONS OF THE |
| vs. | FAIR HOUSING ACT<br>AND |
| RICHELLE RIZZO,<br>AND<br>HOUSING AUTHORITY OF<br>CHIPPEWA COUNTY,<br>AND<br>MARIA GERSZEWSKI,<br>IN THEIR INDIVIDUAL<br>CAPACITIES<br>711 N Bridge Street, Room 14<br>Chippewa Falls, WI 54729 | THE REHABILITATION<br>AND<br>FOR INJUNCTION<br>AND<br>FOR DAMAGES |
| Defendants. | JURY DEMANDED |

**26 CV 566 JDP**

Plaintiff alleges as follows.

## JURISDICTION

1. This court has jurisdiction because the defendants reside in this judicial district and are government actors, and claims are sought under

1

federal statutes.

2.  A disabled plaintiff may sue the state itself and its offices pursuant to Title II of the ADA, which also waives sovereign immunity under the Rehabilitation Act at Section 504:

> Thus, insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity.

*United States v. Georgia*, 546 U.S. 151, 159, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006).

3  And he may sue the state through prospective injunctive relief against its officials:

> Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State cannot be sued directly in its own name regardless of the relief sought. . . . only because official-capacity actions for prospective relief are not treated as actions against the State.

*Kentucky v. Graham*, 473 U.S. 159, 167, n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

4.  He may also sue a state officer in her *personal* capacity to stop enforcement of an unconstitutional statute or custom or policy, and seek

damages if the officer knew or should have known that the statute or policy

was not constitutional because in doing so the officer is "outside the scope

of authority" for Eleventh Amendment purposes and also for qualified

immunity. *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs.*

*Admin.*, 603 F.3d 365, 370–71 (7th Cir. 2010)("The Eleventh Amendment

does not bar plaintiff from seeking injunctive and declaratory relief against

named state officials."); *Walker v. Brooks*, 2009 U.S. Dist. LEXIS 91566 at

*24 (W.D. Pa. Sept. 30, 2009)(the fact that the High Court ruled on the

issue in a different fact scenario prevents immunity); *Avalos v. Kirchen-*

*Rolph*, 1:21-cv-84-CDB (PC), 2023 U.S.Dist.LEXIS 161876 at * 16-17

(E.D. Cal. Sept. 12, 2023)(11th Amendment "does not bar official capacity

suit for prospective relief . . . nor does it bar suit for damages against state

officials in their personal capacities." and "personal capacity basis is

assumed if the complaint is silent as to capacity").

5. This is the rule even if the state purports to grant to its officers the

right to violate federal laws enumerated below:

> If the act which the state attorney general seeks to enforce be
> a violation of the Federal Constitution, the officer, in proceeding
> under such enactment, comes into conflict with the superior
> authority of that Constitution, and he is in that case stripped of
> his official or representative character and is subjected in his

person to the consequences of his individual conduct. The State has no power to impart to its officer immunity from responsibility to the supreme authority of the United States.

*Ex Parte Young*, 209 U.S. 123, 159-60, 28 S.Ct. 441, 454 [5], 52 L.Ed.714 (1908).

## STATEMENT OF THE CASE

6. This is an action by a disabled veteran to compel action by the county agency by mandamus and for damages for multiple failures of processing that rose to the level of reckless or deliberate indifference.

## GENERAL ALLEGATIONS

7. Exhibit A is plaintiff's inquiry to rent housing from the county of 11/5/2025, sent but not answered.

8. Exhibit B is plaintiff's follow-on letter of 12/20/25 for the same purpose and asking if he can get a disability accommodation of a preference for early processing. Plaintiff got nothing back.

9. Exhibit C is a form plaintiff was directed in April to use online to apply formally. It was defective. One line populated all lines and plaintiff tried for weeks to reach Defendant GERSZEWSKI to get help on using it, but she was never available.

4

10. Exhibit D is record of a 5/5/2026 voucher issued to allow the federal government to pay most of the rent and, with an additional disability payment for injuries during duty, it would pay for all the rent. It was sent to these defendants and ignored.

11. Exhibit E is a June 10, 2026 demand under state open records laws for information that would help plaintiff determine his status, placement and rights. Defendants declined to honor it.

12. Plaintiff is in competition for employment that would generate $1,000 a week starting in 2027 and continue for at least two years. But he must have a home in the county by October 2026 to be eligible for that work, and he must meet or visit 1,000 people a week starting in April and until October to gain that position, and undertake other steps from his home in the county to succeed. It cannot be done from the trunk of a car.

13. He cannot now succeed at either step because he is spending his time doing research to get the home that he needs to succeed instead of doing the content for that competition.

14. Had defendants processed plaintiff's requests timely and reasonably, he would have been #1 on the housing list by April this year and he would have as a residence the home at Lake Wissota now, and would

make the deadlines and get the work.

15. But for defendants' failures and refusals to process his requests within days, weeks, or months, he would not have spent hundreds of hours of research for *this* complaint.

16. Those failures and refusals were deliberate, or reckless, in an effort to hurt plaintiff solely because he is disabled, refusing to obey federal disability laws because they are a nuisance and these defendants want to follow what they do as if they are not subject either state or federal laws.

17. Therefore, their deliberate or reckless refusals were the actual, proximate, or substantial cause for plaintiff's delays in pursuing this work and for his loss of that chance, under the rule in *Scirex Corp. v. Federal Ins. Co.*, 313 F.3d 841, 849-50 (3d Cir. 2002)(the direct cause of a loss "does not have to be the sole cause or immediate cause" of plaintiff's loss for him to prevail, "but need only be a proximate or substantial cause" of the loss to allow a damages award).

///

## FIRST CAUSE OF ACTION

## FOR THE COUNTY'S DENIAL OF THE 14TH AMENDMENT

## TO THE CONSTITUTION OF THE UNITED STATES

## ENFORCED BY THE CIVIL RIGHTS ACT

18. All prior allegations are incorporated into this one by this reference.

19. Plaintiff's June 10, 2026 demand for information was made as of right under Wisconsin Open Records Law at § 19.35(4)(a).

20. It was not honored without delay or with dates given when it would be honored as the state statute requires, and on June 15, 2026 Ms. Rizzo informed plaintiff it would not yet be honored and have no dates as to when it might be with a string of excuses of pure gibberish, of a type that the state court has held to violate that statute:

> [A]n authority shall fill or deny the request "as soon as practicable and without delay. "Those are the statutory choices: comply or deny. . .. "In sum, the language and the public policy of the open records and open meetings laws require timely access to the affairs of government." (Emphasis added.) The State's third choice, compliance at some unidentified time in the future, is not authorized by the open records law.

*WTMJ, Inc. v. Sullivan*, 204 Wis.2d 452, 457-58 (Ct. App. Wis. 1996).

21. The failure of a government agency to honor a statute sounds in a violation of the process due under the rule in *Carlo v. City of Chino*, 105 F.3d 493, 495 [4](9th Cir. 1997)(state statute which mandates a process that is due, when denied can establish a violation of due process under the 14th Amendment of the U.S. Constitution and form the basis for a claim under the Civil Rights Act).

22. The defendants had a duty to provide the information immediately, or to explain why they could not and say when they will, and did not.

23. On June 10, 2026 plaintiff allowed an extra 5 days to answer after they had his formal application on May 27, 2026 and still they would not.

24. Therefore, the defendants violated due process guaranteed by the 14th Amendment and is enforced by the Civil Rights Act at 42 U.S.C. §1983.

25. To state a claim under the Civil Rights Act a party must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States, as at *Natale v. Camden Cnty. Corr. Facility*, 318

F.3d 575, 580–81 (3d Cir.2003).

26. Complaint ¶ 1 satisfies element 1 above. Complaint ¶¶ 19-24 satisfies element 2.

27. Therefore, defendants are fully liable for plaintiff's injuries as described at ¶¶ 12-15, and may be enforced by the Civil Rights Act.

28. WHEREFORE, plaintiff seeks and is entitled to injunctive relief against the County to compel it to process plaintiff's request for the same property and to house plaintiff there at once, and for $240,000 in lost salary because they did not act fast enough from April to June 2026 and for $350,000 to buy a house, and for $500,000 for personal injuries described more fully hereafter, for a total of $990,000.

**SECOND  CAUSE  OF  ACTION**

**FOR  THE  COUNTY'S  DENIAL  OF  THE  FEDERAL HOUSING ACT AND  REHABILITATION  ACT  DIRECTLY  OR ENFORCED  BY  THE  CIVIL  RIGHTS  ACT**

29. All prior allegations are incorporated into this one by this reference.

30. A county violates this act by refusing accommodations or changes in their rules, when such accommodations "may be necessary to afford such person equal opportunity to use and enjoy a dwelling", according to 42 U.S.C. § 3604(f)(3)(B) ("prohibited discrimination encompasses 'a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling'"), as followed in *Jankowski Lee & Associates v. Cisneros*, 91 F.3d 891 (7th Cir. 1996).

31. Such an accommodation was necessary here because of each role played by each defendants:

( a ) The Housing Authority under the advice of Defendant Rizzo and the approval of the county itself established a custom and policy of applying their "facially neutral" policies of failing to give disabled applicants information about accessible units until after they are gone, failing to invite early applications to avoid that loss, failing to even tell the disabled what his priority number is, failing to consider and discuss with plaintiff duties and rights that the Rehabilitation Act or ADA could require and allow, knowing that secrecy would sabotage disabled applicants.

10

( b )   Defendant GERSZEWSKI was tasked with denying any useful information that could help the disabled to keep them in the dark by direction from Rizzo or by a tacit understanding that this defendant would do so with Rizzo, a policy of "I see nothing", "I hear nothing", and "I know nothing", and to give the impression that this defendant does not actually read what the disabled ask, as evidenced by her unresponsive "cold shoulder" toward this applicant.

( c )   The county and its office and each supervisor in the Board of Supervisors in addition to setting forth the scheme to avoid helping the disabled because they are disabled, were made aware of the allegations and letters and legal citations by this plaintiff on June 10, 2026 and June 15, 2026 and refused to correct these violations of Rizzo and Gerszewski, acquiesced in the plan of silence and prejudice, creating new violations every day by inaction since plaintiff asked the defendants in spring 2026 which units had elevators or were on ground floors, and they knew he had disabilities because the HUD VASH program required them.  So defendants were on notice before they rented the accessible units to others without giving plaintiff a chance to rent first, according to *Jankowski, supra*, at 896 (7th Cir. 1996).  They had a duty to actively engage with plaintiff, to

11

suspend their own procedures and not rent the ground units to others before they solicited an application from plaintiff because under their secrecy rules only they knew what was available and when, so they violated the FHA by refusing that advance effort to dialogue and accommodate even if plaintiff did not make a formal application yet:

> This prohibition on discrimination also makes it unlawful to refuse "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling [.]" 42 U.S.C. § 3604(f) (3) (B).

*Jankowski, supra*, at 895.

32. Because of plaintiff's disabilities, he cannot just wait with no end in sight, especially since his voucher that is based on his disability expires in September 2026, and then jump at do things at the last minute if these defendants get around to it this year or next. He does not know if he will be able to walk at the last minute. He was in emergency rooms 12 times in the past several months just trying to walk and sleep. He needs 500% more time to read anything. So the rights under the state Open Records Law are absolutely necessary because he is disabled. Where does he stand each day?

12

33. But the rules of the defendants are utter secrecy, which incidentally violates the Open Records Law and the due process clause of the Constitution. The accommodation is exposing the secrecy so he knows every day when he can start campaigning for that job. Just the stress of not knowing every day adds to his injuries and has made it impossible to sleep at night, forcing him to an E.R. to administer morphine to stop the stress and the pain that comes with it.

34. Plaintiff has been injured by this refusal to make a reasonable accommodation of information, by exacerbating his physical injuries. In short, he has suffered personal injuries by the denials. He was forced to medication between emergency room visits that he never had to take before, just from the uncertainty of the secrecy of these defendants' operations and now takes ulcer pills he did not have to take before to counter the new pills to add to old pills.

35. He also suffered the injury of a loss of a residence at all.

36. On information and belief, one reason for the secrecy is a deliberate effort to "shake" plaintiff off their lists by denying him any housing at all, and refusing to honor the federal voucher because he is disabled and asked about elevators in the units.

13

37. This is because the Rehabilitation Act of 1973 Section 504 (29 U.S.C. § 794), requires the federally funded housing program to pay for ramps or elevators under the federal regulations, or to move the disabled to a place that already accommodates him, at 24 C.F.R. § 8.21 and § 8.24 (A recipient shall operate each program or activity so that, when viewed in its entirety, it is readily accessible to and usable by individuals with disabilities).

38. That may force the housing place to pay for upgrades although perfect equality is not required, under the rule in *Wisconsin Community Services, Inc. v. City of Milwaukee,* 465 F.3d 737 (7th Cir. 2006).

39. So, the defendants "reserved" all their units all year to give away those that plaintiff could have taken when he had a higher priority than other applicants, to deny him those accessible units, and they kept that process secret until they can say they have no units on a ground level so plaintiff cannot have *any* units.

40. Had they processed when he asked, plaintiff would be in a unit now because he was #1 for months and was ignored.

41. This is why it is all a secret.

42. And that bias continues. Only one was left on June 10, close to the ground, at Lake Wissota. They refuse *now* to give it to plaintiff, even though nobody else asked for it before plaintiff did. It is a bold and deliberate or reckless indifference to his disabilities and punishment for them.

43. Plaintiff believes depositions will reveal staff actually tried to push that Wissota unit onto others, to "sell" it, to avoid plaintiff taking it and for the county to be forced to pay for a ramp to avoid exactly one step.

44. Thus, because the defendants deliberately orchestrated sabotage to avoid paying for one ramp or giving plaintiff a unit elsewhere, plaintiff is entitled to a remedy that is close to what he would have had without the sabotage. One of the least expensive is at 6 Bay St., for $350,000. Therefore, he seeks $350,000 as damages for deliberate sabotage of the Rehabilitation and Fair Housing Acts.

45. This sabotage was an actual and substantial cause for plaintiff's inability to move into any of the earlier units before defendants went secret to hide shuffling of priority numbers from plaintiff in April 2026, and telling plaintiff to complete a form that does not work to delay his formal filing and avoid a prior priority.

46. Additionally, because the defendants knew they were violating federal law and continued for months to do so, real persons are liable for punitive damages under the rule in *Kolstad v. American Dental Ass'n*, 527 U.S. 526, at page 535 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999)(the definition of malice is not hatred or ill-will: it is only enough that the official knew or *should have known* that he "may be acting in violation of federal law" ).

47. WHEREFORE, plaintiff seeks from the county $500,000 in damages for personal injuries, plus $350,000 in the cost of a comparable home, plus $240,000 in lost salary in 2027 from being unable from April to October 2026 to live in peace in his own residence so he could concentrate his time on the work effort and avoid a dozen visits to hospitals that the stress of the defendants' sabotage created, for a total of $990,000.

48. Additionally, plaintiff is entitled to seek $990,000 the same from the individual defendants plus an additional $2.1 million in punitive damages that the law does not permit to be taken from a county, for a total of $3 million.

49. And neither of the staffers have qualified immunity available because they knew or should have known their secrecy program was hurting

plaintiff because he told them so, and violated federal disability laws and they continued it anyway, allowing a jury to disregard any immunity of any kind, according to *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)("Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "[o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.") .

50. These allegations are verified.

DATED: June 15, 2026

Melvin Marin